James A. Hunter (*pro hac pending*)
   New York State Bar No. 4346607
HUNTER & KMIEC
150 East 44th Street, No. 9A
New York, New York  10017
Tel:    (646) 666-0122
Fax:   (646) 462-3356
E-Mail: hunter@hunterkmiec.com

*Attorneys for Plaintiff Sun River*
   *Energy, Inc.*

James E. Pennington
   Texas State Bar No. 15758510
SUN RIVER ENERGY, INC.
5950 Berkshire Lane, Suite 1650
Dallas, Texas  75225
Tel:    (214) 369-7300
Fax:   (214) 369-7301

*General Counsel for Plaintiff Sun River*
   *Energy, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORTH WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>HARRY NEAL McMILLAN,<br><br>    Debtor. | Involuntary Chapter 7<br><br>No. 11-47029 (DML) |
| SUN RIVER ENERGY, INC.,<br><br>    Plaintiff,<br><br>– v. –<br><br>HARRY NEAL McMILLAN, CICERONE CORPORATE DEVELOPMENT, LLC, CE McMILLAN FAMILY TRUST, and JH BRECH, LLC,<br><br>    Defendants. | Adversary Case No. _____<br><br>COMPLAINT FOR RECOVERY OF SHORT-SWING PROFITS UNDER 15 U.S.C. § 78p(b) |

    Plaintiff Sun River Energy, Inc., through its attorneys Hunter & Kmiec,

hereby complains of Defendants, averring as follows:

**INTRODUCTION**

1.      This adversary proceeding arises under Section 16(b) of the

Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).

Section 16 is the "original and only express 'insider' trading provision[]" in the Act.

Richard W. Jennings et al., Securities Regulation: Cases and Materials 1202 (8th ed.

1998).  Its stated purpose is to "prevent[] the unfair use of information" that an insider

may have "by reason of his relationship to the issuer."  § 78p(a).

2.      Section 16 of the Act applies to the directors and officers of any

issuer with a class of publicly traded equity securities.  15 U.S.C. § 78p(a), (b).  It also

applies to each beneficial owner of more than 10% of the outstanding shares of any such

class.  *Id.*  If any such officer, director, or beneficial owner realizes a profit from the

purchase and sale, or sale and purchase, of any equity security of the issuer within a

period of less than six months, Section 16(b) requires him to disgorge that profit to the

issuer.  § 78p(b).  If he fails to return his "short-swing" profit to the issuer, Section 16(b)

authorizes the issuer to bring suit against him to recover it.  *See id.*

3.      A plaintiff does not need to prove scienter or intentional

wrongdoing to recover short-swing profit.  *See Reliance Electric Co. v. Emerson Electric

Co.*, 404 U.S. 418, 422 (1972).  A defendant may be found liable regardless of whether

he actually misused nonpublic information, *see id.*; regardless of whether he engaged in a

transaction at the issuer's request, *see Tex. Int'l Airlines v. Nat'l Airlines, Inc.*, 714 F.2d

533, 536 (5th Cir. 1983); and regardless of whether he even knew of the statute, *see Selas

Corp. of Am. v. Voogd*, 365 F. Supp. 1268, 1271 (E.D. Pa. 1973).  Once a plaintiff

establishes that the defendant has engaged in a profitable short-swing transaction, the defendant's liability is "strict." *Reliance Electric*, 404 U.S. at 422 (internal quotation marks omitted).

4.      Congress enacted Section 16(b) knowing that the statute could be a trap for the unwary. It believed the statute's deterrent effect would be undermined if liability turned on proving an actual misuse of inside information. *See id.* ("[Strict liability] maximized the ability of the rule to eradicate speculative abuses by reducing difficulties in proof. Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect." (internal quotation marks omitted)). In Congress's view, a "mechanical" rule ensured "that the abuse at which the statute is aimed will be effectively curbed." *Tex. Int'l Airlines*, 714 F.2d at 539.

5.      In this case, plaintiff Sun River Energy, Inc. ("Sun River") seeks to recover short-swing profit from Harry Neal McMillan ("McMillan") and his affiliates Cicerone Corporate Development, LLC ("Cicerone"), CE McMillan Family Trust (the "Trust"), and JH Brech, LLC ("Brech" and, collectively with McMillan, Cicerone, and the Trust, the "Defendants"). The Defendants realized this profit through scores of transactions in Sun River's common stock and derivative securities in 2010 and 2011. Many of these transactions the Defendants failed to disclose to the U.S. Securities and Exchange Commission (the "SEC") in a timely and accurate fashion or at all. Under the inexorable provisions of Section 16(b) of the Act, this profit is Sun River's lawful property, which the Defendants are strictly liable to account for and repay.

## JURISDICTION AND VENUE

6.      Jurisdiction is conferred upon this Court (a) by Section 27 of the

Act, 15 U.S.C. § 78aa; (b) by 28 U.S.C. §§ 157(b)(2)(B) and 1334(b); and (c) by that

certain Standing Order of Referral of Cases to Bankruptcy Judges dated as of August 3,

1984.

7.      Venue is properly laid in this District (a) under Section 27 of the

Act (i) because some or all of the purchases and sales of securities described herein were

executed in, and the Defendants' unlawfully retained short-swing profits were

consequently realized in, this District; (ii) because each Defendant transacts business in

this District; and (iii) because each Defendant is found in this District; and (b) under 28

U.S.C. § 1409(a) because this matter relates to a proceeding arising under Chapter 7 of

Title 11, U.S. Code, which is currently pending against McMillan before the Honorable

D. Michael Lynn, U.S. Bankruptcy Judge, in the case styled *In re McMillan*,

No. 11-47029-7 (N.D. Tex. Bankr. filed Dec. 21, 2011) (the "Chapter 7 Bankruptcy").

8.      This adversary proceeding is a core proceeding under 28 U.S.C.

§ 157(b)(2)(B) because it relates to the allowance or disallowance of claims against

McMillan's estate.  If the Court determines this action to be a non-core proceeding, Sun

River consents to entry of final orders or judgment by the Bankruptcy Judge.

## THE PARTIES

### Parties to This Action

9.      Plaintiff Sun River is a corporation organized under the law of the

State of Colorado and having a principal place of business in Dallas, Texas.

10.     Defendant McMillan is a natural person and a resident of Texas.

McMillan is the debtor named in the involuntary petition filed in the Chapter 7

Bankruptcy.

11.     Defendant Cicerone is a limited liability company organized under

the law of the State of Texas and having a principal place of business in Trophy Club,

Texas.  McMillan was a member of Cicerone at all relevant times until approximately

May 2, 2011.  From approximately April 8, 2011 until approximately May 2, 2011,

McMillan was Cicerone's sole member and manager, and McMillan has had sole control

over Cicerone at all relevant times since approximately April 8, 2011.

12.     Defendant Trust is a revocable trust formed on or about April 1,

2011 for the benefit of McMillan and members of his immediate family.  McMillan is the

trustee of the Trust.  On or about May 2, 2011, the Trust acquired from McMillan all of

the outstanding membership interests in Cicerone.

13.     Defendant Brech is a limited liability company organized under the

law of the State of Texas and having a principal place of business in Texas.  McMillan is

a member of Brech and has de facto or de jure control over it.

## **Other Relevant Parties**

14.     Joshua Pingel ("Pingel") is a natural person and a resident of the

State of Colorado.  Pingel was the managing member of Cicerone at all relevant times

until approximately April 8, 2011, when he sold all of his interest in Cicerone to

McMillan.

15.     New Mexico Energy, LLC ("NME") is a limited liability company organized under the law of the State of Colorado.  From approximately February 8, 2011 until approximately June 30, 2011, McMillan was NME's sole member and manager.

16.     Robert Doak ("Doak") is a natural person and a resident of the State of Colorado.  At all relevant times until approximately February 8, 2011, Doak was NME's sole member and manager.  On or about February 8, 2011, Doak sold all of his interest in NME to McMillan.

## STATUTORY REQUISITES

17.     The violations of Section 16(b) of the Act described herein involve non-exempt securities in non-exempt transactions engaged in by non-exempt persons within the meaning of the Act.

18.     At all relevant times, Sun River's common stock was registered under Section 12 of the Act, 15 U.S.C. § 78*l*, and was listed for trading on the OTC Bulletin Board.

19.     This action is brought within two years of the occurrence of the violations described herein or within two years of the time when reports required by Section 16(a) of the Act, 15 U.S.C. § 78p(a), setting forth the substance of the transactions here complained of were first filed with the SEC.

## FACTUAL ALLEGATIONS

20.     At all relevant times, McMillan, Cicerone, and Brech each beneficially owned in excess of 10% of the outstanding shares of Sun River's common

stock.  At all relevant times since the Trust's formation on or about April 1, 2011, the

Trust beneficially owned in excess of 10% of the outstanding shares of Sun River's

common stock.

21.    The shares of Sun River's common stock beneficially owned by

each Defendant as described in paragraph 20 above included shares owned in such

Defendant's own name as well as shares owned by other Defendants but imputed to such

Defendant by Section 13(d) of the Act, 15 U.S.C. § 78m(d), and Rules 13d-5(b)(1) and

16a-1(a)(1).  By virtue of such law and rules, each Defendant was deemed to beneficially

own all shares of Sun River's common stock owned by any of the Defendants.

22.    Each Defendant was deemed to beneficially own all shares of Sun

River's common stock owned by any of the Defendants as described in paragraph 21

above because the Defendants acted together as a group for the purpose of serving

McMillan's investment objectives and influencing control of Sun River.  McMillan had

sole or shared power to vote or to dispose of all shares of Sun River common stock (or

derivative securities thereof) owned in his own name or in the names of Cicerone, the

Trust, or Brech.  McMillan dominated and controlled each of Cicerone, the Trust, and

Brech at all relevant times, and each of Cicerone, the Trust, and Brech agreed to act

subject to his control for purposes of their collective investment in Sun River's common

stock and derivative securities.

23.    While each Defendant beneficially owned in excess of 10% of the

outstanding shares of Sun River's common stock as described in paragraph 22 above, the

Defendants engaged in a series of short-swing transactions in that stock as described in the following paragraphs.

### Cicerone Acquires the Doak and NME Options:
### Purchase of 6,117,233 Shares
### (August 3, 2010)

24.    On or about August 3, 2010, Doak sold to Cicerone an option (the "Doak Option"), exercisable on or before August 3, 2012, to purchase 2,941,666 shares of Sun River's common stock at a price equal to $1.50 per share.

25.    On or about August 3, 2010, NME sold to Cicerone an option (the "NME Option"), exercisable on or before August 3, 2012, to purchase 3,175,567 shares of Sun River's common stock at a price equal to $1.50 per share.

26.    For purposes of Section 16 and the SEC's rules and regulations thereunder, Cicerone's purchase of the options described in paragraphs 24-25 above was equivalent in all relevant respects to the purchase by Cicerone of 6,117,233 shares of Sun River's common stock at the contemporaneous market price for such stock.

27.    Sun River's best estimate for the contemporaneous market price of its common stock as described in paragraph 26 above is $1.55 per share, such price being the last reported price of Sun River's publicly traded common stock on August 3, 2010.

### Cicerone Receives Sun River Common Stock
### in Exchange for Canceling Certain Indebtedness:
### Purchase of 312,363 Shares
### (August 6, 2010)

28.    On or about August 6, 2010, Cicerone agreed to accept 312,363 shares of Sun River's common stock in consideration for the cancellation of

$468,541.48 of principal and accrued interest due on certain promissory notes previously issued by Sun River to Cicerone.

29.     For purposes of Section 16 and the SEC's rules and regulations thereunder, the transaction described in paragraph 28 above was equivalent in all relevant respects to the purchase by Cicerone of 312,363 shares of Sun River's common stock at a purchase price equal to $1.50 per share.

### Doak and Cicerone Amend the Doak Option: Simultaneous Purchase and Sale of 2,941,666 Shares (September 21, 2010)

30.     On or about September 21, 2010, Doak and Cicerone agreed to amend the terms of the Doak Option by (a) extending the expiration date of the Doak Option from August 3, 2012 to September 21, 2012; and (b) changing the exercise price from $1.50 per share to an exercise price equal to (i) $1.00 per share for 1,000,000 of such shares, (ii) $2.00 per share for 1,000,000 of such shares; and (iii) $1.50 per share for 941,666 of such shares.

31.     For purposes of Section 16 and the SEC's rules and regulations thereunder, the amendment of the Doak Option as described in paragraph 30 above was equivalent in all relevant respects to the repurchase by Doak of Cicerone's outstanding option to purchase 2,941,666 shares of Sun River's common stock and the simultaneous sale by Doak to Cicerone of a new option to purchase 2,941,666 shares of Sun River's common stock on the amended terms.

32.     For purposes of Section 16 and the SEC's rules and regulations thereunder, the simultaneous purchase and sale of the options described in paragraph 31

above were equivalent in all relevant respects to the simultaneous purchase and sale by

Cicerone of 2,941,666 shares of Sun River's common stock at the contemporaneous

market price for such stock.

33.     Sun River's best estimate for the contemporaneous market price of

its common stock as described in paragraph 32 above is $1.60 per share, such price being

the last reported price of Sun River's publicly traded common stock on September 21,

2010.

**Cicerone Receives Sun River Stock and Warrants**
**as Payment for Consulting Services:**
**Purchase of 240,000 Shares**
**(September 30, 2010 Through February 8, 2011)**

34.     On July 31, 2009, Sun River and Cicerone entered into a

consulting agreement (as amended and extended on July 15, 2010, the "Consulting

Agreement").

35.     The Consulting Agreement obligated Cicerone to provide

consulting services to Sun River and obligated Sun River to pay for such services by

periodically issuing to Cicerone shares of Sun River's common stock and warrants to

purchase shares of such stock.

36.     Each warrant issued under the Consulting Agreement as described

in paragraph 35 above was exercisable (a) on or before the second anniversary of its date

of issue, (b) at a price per share equal to the closing sale price of Sun River's common

stock on the last trading day of the month in which the relevant services were performed,

and (c) on a "cashless" or "net issue" basis.

37.   Pursuant to the Consulting Agreement, Sun River issued to Cicerone, as consideration for Cicerone's consulting services, the following shares of Sun River's common stock on the following dates:

(a)   20,000 shares on September 30, 2010;

(b)   20,000 shares on October 19, 2010;

(c)   20,000 shares on November 30, 2010;

(d)   20,000 shares on December 31, 2010; and

(e)   20,000 shares on February 8, 2011.

38.   Pursuant to the Consulting Agreement, Sun River issued to Cicerone, as consideration for Cicerone's consulting services, the following warrants on the following dates:

(a)   warrants on September 30, 2010 to purchase 40,000 shares of Sun River's common stock;

(b)   warrants on October 19, 2010 to purchase 20,000 shares of Sun River's common stock;

(c)   warrants on November 30, 2010 to purchase 20,000 shares of Sun River's common stock;

(d)   warrants on December 31, 2010 to purchase 20,000 shares of Sun River's common stock;

(e)   warrants on January 3, 2011 to purchase 20,000 shares of Sun River's common stock; and

(f)      warrants on February 8, 2011 to purchase 20,000 shares of Sun River's common stock.

39.      For purposes of Section 16 and the SEC's rules and regulations thereunder, the transactions described in paragraphs 37-38 above were equivalent in all relevant respects to Cicerone's purchase of an aggregate of 240,000 shares of Sun River's common stock on the following dates and at the following prices:

| Date of Purchase | Number of Shares Purchased | Price per Share |
|---|---|---|
| 09/30/2010 | 40,000 | $1.80 |
| 09/30/2010 | 20,000 | $1.80 |
| 10/19/2010 | 20,000 | $1.95 |
| 10/19/2010 | 20,000 | $1.95 |
| 11/30/2010 | 20,000 | $2.22 |
| 11/30/2010 | 20,000 | $2.22 |
| 12/31/2010 | 20,000 | $2.79 |
| 12/31/2010 | 20,000 | $2.79 |
| 01/03/2011 | 20,000 | $2.56 |
| 02/08/2011 | 20,000 | $4.70 |
| 02/08/2011 | 20,000 | $4.70 |

40.      Each price set forth in the last column of the table in paragraph 39 above is the last reported price of Sun River's publicly traded common stock on the corresponding date set forth in the first column of the table.  Each such price is Sun River's best estimate of (a) in the case of the shares issued to Cicerone as described in paragraph 37 above, the per share value of such shares, and (b) in the case of the warrants

issued to Cicerone as described in paragraph 38 above, the contemporaneous market price per share of Sun River's common stock.

### McMillan Acquires NME:
### Purchase of 2,851,666 Shares
### (February 8, 2011)

41.     On or about February 8, 2011, McMillan entered into an agreement with Doak pursuant to which McMillan purchased from Doak 100% of the outstanding membership interests in NME for $1,000 (the "NME Purchase").

42.     At the time of the NME Purchase, NME's sole asset was 2,851,666 shares of Sun River's common stock.

43.     For purposes of Section 16 and the SEC's rules and regulations thereunder, the NME Purchase was equivalent in all relevant respects to McMillan's purchase of 2,851,666 shares of Sun River's common stock for aggregate consideration equal to $1,000, or approximately $0.0004 per share.

### Cicerone "Cashlessly" Exercises Warrants:
### Sale of 203,607 Shares
### (January 3, 2011 Through March 7, 2011)

44.     From time to time from and including approximately January 3, 2011 to and including approximately March 7, 2011, Cicerone exercised certain warrants it owned to purchase shares of Sun River's common stock.

45.     Cicerone elected to exercise some or all of its warrants as described in paragraph 44 above on a "cashless" basis.  Pursuant to the terms of those warrants, Cicerone paid the exercise price in each case by allowing Sun River to withhold some of the shares that otherwise would have been issuable upon exercise.  The number

of shares withheld in each case was determined by dividing the aggregate exercise price

of the exercised warrants by the contemporaneous market price per share of Sun River's

common stock.

46.      For purposes of Section 16 and the SEC's rules and regulations

thereunder, the cashless exercise of Cicerone's warrants as described in paragraphs 44-45

above was equivalent in all relevant respects to Cicerone's sale of an aggregate of

203,607 shares of Sun River's common stock on the following dates and at the following

prices:

| Date of Sale | Number of Shares Sold | Price per Share |
|---|---|---|
| 01/03/2011 | 7,000 | $2.44 |
| 01/04/2011 | 6,500 | $2.65 |
| 01/05/2011 | 2,500 | $2.75 |
| 01/11/2011 | 1,000 | $2.73 |
| 01/12/2011 | 1,000 | $2.80 |
| 02/03/2011 | 42,000 | $4.12 |
| 03/07/2011 | 6,337 | $5.05 |
| 03/07/2011 | 6,733 | $5.05 |
| 03/07/2011 | 7,723 | $5.05 |
| 03/07/2011 | 10,812 | $5.05 |
| 03/07/2011 | 8,158 | $5.05 |
| 03/07/2011 | 16,832 | $5.05 |
| 03/07/2011 | 11,050 | $5.05 |
| 03/07/2011 | 8,792 | $5.05 |
| 03/07/2011 | 8,119 | $5.05 |
| 03/07/2011 | 7,129 | $5.05 |
| 03/07/2011 | 6,178 | $5.05 |

| Date of Sale | Number of Shares Sold | Price per Share |
|---|---|---|
| 03/07/2011 | 5,980 | $5.05 |
| 03/07/2011 | 6,535 | $5.05 |
| 03/07/2011 | 5,743 | $5.05 |
| 03/07/2011 | 6,535 | $5.05 |
| 03/07/2011 | 8,119 | $5.05 |
| 03/07/2011 | 6,733 | $5.05 |
| 03/07/2011 | 6,099 | $5.05 |

### Cicerone and McMillan Settle a Dispute with Pingel: Acquisition of Approximately 3,500,000 Shares by McMillan and Sale of 350,000 Shares by Cicerone (April 8, 2011)

47.     On or about April 8, 2011, Cicerone and McMillan entered into a settlement agreement (the "Cicerone Settlement Agreement") with Pingel that resolved certain disputes relating to the ownership and management of Cicerone.

48.     Pursuant to the terms of the Cicerone Settlement Agreement, (a) McMillan agreed to acquire from Pingel all of the interest that Pingel then owned in Cicerone, with the result that McMillan became Cicerone's sole owner and manager; and (b) Cicerone transferred to Pingel 350,000 shares of Sun River's common stock.

49.     For purposes of Section 16 and the SEC's rules and regulations thereunder, McMillan's acquisition of Pingel's interest in Cicerone as described in paragraph 48(a) above was equivalent in all relevant respects to McMillan's acquisition of approximately 3,500,000 shares of Sun River's common stock (representing Pingel's proportionate interest in the shares of Sun River's common stock owned by Cicerone) for consideration equal to their contemporaneous market value.

50.    For purposes of Section 16 and the SEC's rules and regulations thereunder, Cicerone's transfer to Pingel of 350,000 shares of Sun River's common stock as described in paragraph 48(b) above was equivalent in all relevant respects to the sale by Cicerone of 350,000 shares of Sun River's common stock for consideration equal to their contemporaneous market value.

51.    Sun River's best estimate for the contemporaneous market value of the common stock described in paragraphs 49-50 above is $5.05 per share, such price being the last reported price of Sun River's publicly traded common stock on April 8, 2011.

**Brech Sells Shares:**
**Sale of 100,000 Shares**
**(May 2, 2011)**

52.    Upon information and belief based upon third-party reports received by Sun River, Brech sold approximately 100,000 shares of Sun River's common stock in one or more transactions during the months of April 2011 and May 2011.

53.    The transaction or transactions described in paragraph 52 above were not reported to the SEC, and the precise circumstances of the transaction or transactions remain unknown to Sun River.

54.    For purposes of the short-swing profit calculation set forth herein, Sun River estimates that Brech sold 100,000 shares of Sun River's common stock at a weighted average price of $5.12 per share, such price being the last reported price of Sun River's publicly traded common stock on May 2, 2011.

**McMillan Sells NME:**
**Sale of 2,851,666 Shares**
**(June 30, 2011)**

55.     On or about June 30, 2011, McMillan entered into an agreement

with a third-party purchaser pursuant to which McMillan sold to such third party 100% of

the outstanding membership interests in NME for $2,851,666.00 (the "NME Sale").

56.     At the time of the NME Sale, NME's sole asset was

2,851,666 shares of Sun River's common stock.

57.     For purposes of Section 16 and the SEC's rules and regulations

thereunder, the NME Sale was equivalent in all relevant respects to McMillan's sale of

2,851,666 shares of Sun River's common stock for aggregate consideration equal to

$2,851,666.00, or approximately $1.00 per share.

**Cicerone Cancels the NME Option:**
**Sale of 2,821,666 Shares**
**(October 28, 2011)**

58.     On or about October 28, 2011, Cicerone and NME entered into an

agreement pursuant to which Cicerone, in consideration for value received from NME or

its affiliates, cancelled the NME Option.

59.     At the time the NME Option was cancelled, 2,821,666 shares of

Sun River's common stock remained subject to it.

60.     For purposes of Section 16 and the SEC's rules and regulations

thereunder, Cicerone's cancellation of the NME Option was equivalent in all relevant

respects to the sale by Cicerone of 2,821,666 shares of Sun River's common stock at the

contemporaneous market price for such stock.

61.    Sun River's best estimate for the contemporaneous market price of its common stock as described in paragraph 60 above is $2.80 per share, such price being the last reported price of Sun River's publicly traded common stock on October 28, 2011.

### Summary

62.    The following table summarizes the Section 16 treatment of the transactions described in paragraphs 24-61 above:

| Date of Transaction | Section 16 Treatment | Number of Shares | Price per Share |
|---|---|---|---|
| 08/03/2010 | Purchase | 2,941,666 | $1.5500 |
| 08/03/2010 | Purchase | 3,175,567 | $1.5500 |
| 08/06/2010 | Purchase | 312,363 | $1.5000 |
| 09/21/2010 | Sale | 2,941,666 | $1.6000 |
| 09/21/2010 | Purchase | 2,941,666 | $1.6000 |
| 09/30/2010 | Purchase | 20,000 | $1.8000 |
| 09/30/2010 | Purchase | 20,000 | $1.8000 |
| 09/30/2010 | Purchase | 20,000 | $1.8000 |
| 10/19/2010 | Purchase | 20,000 | $1.9500 |
| 10/19/2010 | Purchase | 20,000 | $1.9500 |
| 11/30/2010 | Purchase | 20,000 | $2.2200 |
| 11/30/2010 | Purchase | 20,000 | $2.2200 |
| 12/31/2010 | Purchase | 20,000 | $2.7900 |
| 12/31/2010 | Purchase | 20,000 | $2.7900 |
| 01/03/2011 | Purchase | 20,000 | $2.5600 |
| 01/03/2011 | Sale | 7,000 | $2.4400 |
| 01/04/2011 | Sale | 6,500 | $2.6500 |
| 01/05/2011 | Sale | 2,500 | $2.7500 |
| 01/11/2011 | Sale | 1,000 | $2.7300 |

| Date of Transaction | Section 16 Treatment | Number of Shares | Price per Share |
|---|---|---|---|
| 01/12/2011 | Sale | 1,000 | $2.8000 |
| 02/03/2011 | Sale | 42,000 | $4.1200 |
| 02/08/2011 | Purchase | 2,851,666 | $0.0004 |
| 02/08/2011 | Purchase | 20,000 | $4.7000 |
| 02/08/2011 | Purchase | 20,000 | $4.7000 |
| 03/07/2011 | Sale | 6,337 | $5.0500 |
| 03/07/2011 | Sale | 6,733 | $5.0500 |
| 03/07/2011 | Sale | 7,723 | $5.0500 |
| 03/07/2011 | Sale | 10,812 | $5.0500 |
| 03/07/2011 | Sale | 8,158 | $5.0500 |
| 03/07/2011 | Sale | 16,832 | $5.0500 |
| 03/07/2011 | Sale | 11,050 | $5.0500 |
| 03/07/2011 | Sale | 8,792 | $5.0500 |
| 03/07/2011 | Sale | 8,119 | $5.0500 |
| 03/07/2011 | Sale | 7,129 | $5.0500 |
| 03/07/2011 | Sale | 6,178 | $5.0500 |
| 03/07/2011 | Sale | 5,980 | $5.0500 |
| 03/07/2011 | Sale | 6,535 | $5.0500 |
| 03/07/2011 | Sale | 5,743 | $5.0500 |
| 03/07/2011 | Sale | 6,535 | $5.0500 |
| 03/07/2011 | Sale | 8,119 | $5.0500 |
| 03/07/2011 | Sale | 6,733 | $5.0500 |
| 03/07/2011 | Sale | 6,099 | $5.0500 |
| 04/08/2011 | Sale | 350,000 | $5.0500 |
| 04/08/2011 | Purchase | 3,500,000 | $5.0500 |
| 05/02/2011 | Sale | 100,000 | $5.1200 |
| 06/30/2011 | Sale | 2,851,666 | $1.0000 |

| Date of Transaction | Section 16 Treatment | Number of Shares | Price per Share |
|---|---|---|---|
| 10/28/2011 | Sale | 2,821,666 | $2.8000 |

## FIRST CLAIM FOR RELIEF
## (AGAINST EACH DEFENDANT)

63.     Sun River realleges and incorporates by reference the allegations in paragraphs 1-62 above.

64.     Certain of the sales described in paragraphs 24-62 above occurred within six months of, and at prices higher than, certain of the purchases described in paragraphs 24-62 above.

65.     Each Defendant had a pecuniary interest, directly or indirectly, in some or all of the shares of Sun River's common stock purchased and sold as described in paragraphs 24-62 above.

66.     Under the "lowest-in, highest-out" method for computing realized profits pursuant to Section 16(b) of the Act, the Defendants realized recoverable profits as a result of the transactions described in paragraphs 24-62 above in an aggregate amount estimated to be equal to at least $4.0 million.

67.     Pursuant to Section 16(b) of the Act, the profits realized by the Defendants as described in paragraph 66 above inured to Sun River and are its lawful property, which the Defendants are liable to account for and repay.

## SECOND CLAIM FOR RELIEF
### (AGAINST EACH DEFENDANT)

68.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-67 above.

69.    Under Section 16(a) of the Act and Rule 16a-3(g)(1) thereunder, a person subject to Section 16 with respect to an issuer's securities generally must file a Form 4 with the SEC accurately disclosing any transaction in those securities before the end of the second business day following the day on which the subject transaction is executed.

70.    Notwithstanding their obligations under Section 16(a) of the Act, the Defendants failed to disclose many of the transactions described in paragraphs 24-62 above timely, accurately, or at all.  Examples of the Defendants' reporting deficiencies include, and are not limited to, the following:

(a)    Cicerone reported the transactions described in paragraph 38 above as exempt acquisitions under Rule 16b-3, even though Cicerone is not, and never has been, an officer or director of Sun River;

(b)    All but five of the transactions described in paragraph 46 above were reported more than two business days (and in many cases more than two weeks) after they occurred;

(c)    None of the transactions described in paragraphs 41-43 above or in paragraphs 55-57 above was reported at all;

(d)    No Form 4 has ever been filed reporting any transaction in the name of McMillan, the Trust, or Brech.

71.     In light of the deficiencies described in paragraph 70 above, Sun River adds this Second Claim for Relief as a precaution against the discovery during the course of this action of previously unreported, or inaccurately reported, short-swing transactions.

72.     One or more of the Defendants purchased and sold shares of Sun River's common stock (or derivative securities thereof) within less than six months while a holder of in excess of 10% of the outstanding shares of Sun River's common stock.

73.     The purchases and sales described in paragraph 72 above cannot be identified by Sun River with specificity because they have not been publicly reported, or have not been accurately reported, and because Defendants have failed or refused to disclose these trades (or the absence thereof) upon inquiry by Sun River.

74.     Each Defendant had a direct or indirect pecuniary interest in some or all of the shares of Sun River's common stock purchased or sold as described in paragraph 72 above.

75.     The purchases and sales described in paragraph 72 above may be matched against each other (or with other sales and purchases described herein) using the "lowest-in, highest-out" method to arrive at profits, their exact amount being unknown. which profits inured to and are recoverable by Sun River.

## PRAYER FOR RELIEF

WHEREFORE, Sun River respectfully requests a judgment:

(a)     Requiring each Defendant to account for and pay over to Sun River the

        short-swing profit realized and retained by such Defendant in violation of

Section 16(b) of the Act, together with appropriate pre- and post-judgment

interest and the costs of this suit;

(b)     Running jointly and severally with respect to that portion of the

Defendants' short-swing profits in which more than one Defendant has a

pecuniary interest;

(c)     Awarding to Sun River its costs and disbursements including reasonable

attorney's, accountant's, and expert witness fees; and

(d)     Granting to Sun River such other further relief as the Court may deem just

and proper.

Dated: February 10, 2012
       New York, New York

                                        HUNTER & KMIEC

                              By:
                                     /s/ James A. Hunter
                                     James A. Hunter
                                     150 East 44th Street, No. 9A
                                     New York, New York  10017
                                     Tel:     (646) 666-0122
                                     Fax:     (646) 462-3356
                                     E-Mail: hunter@hunterkmiec.com
                                     N.Y. State Bar No. 4346607

                                     *Attorneys for Plaintiff Sun River*
                                          *Energy, Inc.*

                                     James E. Pennington
                                     SUN RIVER ENERGY, INC.
                                     5950 Berkshire Lane, Suite 1650
                                     Dallas, Texas  75225
                                     Tel:     (214) 369-7300
                                     Fax:     (214) 369-7301

                                     *General Counsel for Plaintiff Sun River*
                                          *Energy, Inc.*